UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TYRON ELEY,

                                  Petitioner,          **REPORT AND**
              v.                                       **RECOMMENDATION**

ROBERT ERCOLE,                                         08-CV-917 (NG) (VVP)
                                  Respondent.
----------------------------------------------------------------x
POHORELSKY, Magistrate Judge:

        The petitioner, Tyron Eley, brings this *pro se* petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254.  Eley is currently serving a sentence of 25 years to life, having

been convicted of murder in the second degree following a jury trial in Supreme Court in Kings

County, New York.[1]  *See* N.Y. Penal Law § 125.25(1).  His petition challenges the prosecution's

use of, and the trial court's acceptance of, an untimely, out-of-sequence peremptory challenge to

a prospective juror, in violation of New York Criminal Procedure Law § 270.15(2).  Eley also

asserts that he received ineffective assistance of counsel in relation to the improper peremptory

strike.  For the reasons that follow, I respectfully recommend that the petition be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

        As Eley's claims for the purposes of this habeas petition relate to a specific, defined instance

in the jury selection process and not to any trial issues once the jury was chosen, the court's

recitation of the facts is limited.  In the early morning hours of December 13, 2003, shortly after

leaving a party, Jarell Haskins walked around a corner at the intersection of Ralph Avenue and

Pacific Street in Brooklyn.  (Tr. at 47-48).  Eley, who had also been at the party, approached him

---

[1] Eley had also been charged with Criminal Possession of a Weapon in the Second Degree, but
the trial court instructed the jury that it should not deliberate on the weapons charge if it found him guilty
of the murder count.  (Tr. at 239).  "Tr." refers to the transcripts of the trial, while "V.D. Tr." refers to the
transcripts of the voir dire proceedings.

from behind, shot Haskins three times, and then fled. (Tr. at 48-51, 74-78, 83-84). Haskins died later that morning at St. Mary's Hospital in Brooklyn. (Tr. at 26-27). One month after the shooting, Eley was apprehended in Springfield, Massachusetts and transported back to New York. (Tr. at 117). He was placed in a police line-up with five others and identified as the shooter by three witnesses who had been present. (Tr. at 128-29, 151-55).

Jury selection began on February 2, 2005 before Justice Anne Feldman, and ended the next day. Voir dire was conducted in four different rounds. (V.D. Tr. at 6-168). For each of the first two rounds, sixteen jurors were brought into the jury box. Justice Feldman asked general questions concerning the prospective jurors' occupations, neighborhoods of residence, households, prior jury service, and contacts or experiences with the criminal justice system. The attorneys then separately questioned the jurors on possible sympathies, emotions, or prejudices, the role of jurors, the concepts of reasonable doubt and the presumption of innocence, and their abilities to follow the court's legal instructions. After the first round, the parties successfully challenged six prospective jurors for cause. (V.D. Tr. at 52-53). The clerk then asked for the prosecution's peremptory challenges, and Mark Hale, the Assistant District Attorney, struck three jurors. (V.D. Tr. at 54). Eley's counsel used peremptory challenges against two jurors. Those remaining in the box were seated as jurors on the case. (V.D. Tr. at 54).

The selection process in the second round proceeded a little differently. After the questioning had been completed for that round, the clerk announced, "People, one through nine for cause," thus inviting challenges only as to the first 9 of the 16 jurors then in the box. (V.D. Tr. at 98). Justice Feldman interrupted, however, saying "I do the whole board," essentially overruling the clerk by indicating she would hear "for cause" challenges as to the entire group of 16. (V.D. Tr.

at 98).  Prospective jurors 5 and 16 were successfully challenged for cause.  (V.D. Tr. at 98).  The clerk then asked, "People, one through nine for perempts?" again inviting peremptory challenges only as to a sub-group of the jurors then in the box.  (V.D. Tr. at 98).  This time, Justice Feldman did not interrupt, and the prosecution exercised peremptory challenges on prospective jurors 4, 6, and 8, while the defense used a peremptory strike on prospective juror 1.  (V.D. Tr. at 98).  Thus, at that point, of the first nine prospective jurors in that round, four were chosen as jurors on the case.  (V.D. Tr. at 98).  The court then asked the Assistant District Attorney, "Peremptory, Mr. Hale?"  (V.D. Tr. at 99).  The clerk clarified, "Ten through 15, for perempts?"  (V.D. Tr. at 99).  The prosecution used one peremptory challenge, after which Eley used four, and then the sixth person in that sub-group became a member of the jury.  (V.D. Tr. at 99).  Hale then raised a reverse-*Batson* challenge based on Eley's peremptory challenges against Asian and white prospective jurors.  (V.D. Tr. at 99).  Eley's counsel, in response, proferred race-neutral reasons for those strikes, which Justice Feldman accepted.  (V.D. Tr. at 99-102).  At that point, eight jurors had been chosen to sit on the case.  (V.D. Tr. at 102).

Six members of the venire were then seated for questioning in the jury box for the third round of voir dire.  (V.D. Tr. at 104-05).  After they were questioned, the court heard challenges for cause.  (V.D. Tr. at 120).  The prosecution did not challenge any juror for cause, and the defense's attempt to challenge prospective juror 3 was rejected.  (V.D. Tr. at 120-21).  Justice Feldman then stated, "The whole board perempts?"  (V.D. Tr. at 121).  Hale responded, "Number five, Miss Fortune.  That's it."  (V.D. Tr. at 121).  The court then inquired of defense counsel, who struck jurors 1 and 3.  (V.D. Tr. at 121).  When Justice Feldman then sought to confirm that the remaining

people in that six-person pool – prospective juror 2 and prospective juror 6 (Ms. Ehrenburg)[2] –
would be empaneled to serve as jurors on the case, the District Attorney responded, "I didn't know
we were challenging all the ways [*sic*] up to her," referring to Ehrenburg, prospective juror 6. (V.D.
Tr. at 121). Justice Feldman answered, "I'm sorry, we didn't. You are challenging her?" (V.D. Tr.
at 121). Hale replied affirmatively, the court accepted that peremptory strike, and Ehrenburg was
dismissed. (V.D. Tr. at 121). Counsel for Eley did not object or otherwise respond to what had
occurred. (V.D. Tr. at 121).

In the fourth round of voir dire, the parties and the court selected three jurors and three
alternates. Challenges for cause were heard for the entire panel at one time, while peremptory
challenges were first heard for prospective jurors 1 through 7, then for prospective jurors 8 and 9,
and then for prospective juror 10, who was not struck and was seated, thereby completing the jury.
(V.D. Tr. at 165-67). The trial began on February 7, 2005. Four eyewitnesses testified that Eley
was the shooter and identified him in court. (Tr. at 48-51, 74-78, 95-98, 165-66). Three of those
eyewitnesses had previously identified Eley in the police line-up. (Tr. at 54-55, 81, 99). Of the four
eyewitnesses, three testified that they had known Eley for virtually their entire lives and had grown
up together in the same housing development. (Tr. at 49, 91, 166). The prosecution also submitted
a signed statement Eley had written after being arrested in Massachusetts, which read in relevant
part, "So I took my gun out and start firing at him [Haskins], not to kill him, but just to let him know

---

[2] The record is not clear as to the status of Ms. Holmes, who had been in the jury pool, was seated
as prospective juror number 4, and was questioned during voir dire. The transcript does not indicate
whether she was dismissed, but she does not appear to have been challenged for cause or peremptorily
struck, nor was she selected as a juror.

that what goes around, comes around.[3] And that's why I did what I did. So, I shot him. Then, I shot at his friend to scare him." (Tr. at 128). Later on the second day of trial, the jury returned a guilty verdict on the count charging Eley with second-degree murder. (Tr. at 250).

The Appellate Division affirmed Eley's conviction, finding that his challenge to the improper peremptory strike was waived when his attorney failed to object. *See People v. Eley*, 35 A.D. 3d 498 (2d Dep't 2006). Because of the waiver, the appellate division did not consider the substance of the petitioner's claim, though it did summarily find his "remaining contentions" to be "without merit." *See id.* The petitioner sought leave to appeal, but the Court of Appeals denied that request in March 2007. *People v. Eley*, 866 N.E.2d 458 (N.Y. 2007). As this petition was brought in February 2008, it meets the one-year limitations period and is timely. 28 U.S.C. § 2244(d)(1). And by raising both of the issues he now raises in his direct appeal, the petitioner appears to have exhausted the remedies available to him in state court. 28 U.S.C. § 2254(b)(1)**.**

## II.    DISCUSSION

### A.  Legal Standards

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") authorizes federal courts to "entertain" habeas petitions "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA severely narrowed the circumstances under which federal courts may grant a habeas petition by imposing a more deferential standard of review for habeas claims that have been adjudicated on the merits in state courts. *See* 28 U.S.C. § 2254(d); *Eze v. Senkowski*, 321 F.3d 110, 120 (2d Cir. 2003);

---

[3] Eley alleged that Haskins had robbed him at gunpoint several months prior to the shooting. (Tr. at 128).

*Castro v. Lewis*, No. 03-CV-5480, 2004 WL 2418319, at *2 (E.D.N.Y. Oct. 29, 2004). A federal court may grant a petition on a claim that was adjudicated on the merits in State court only if that decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Williams v. Taylor*, 529 U.S. 362, 403-13 (2000). "A state court adjudicates a claim 'on the merits' for purposes of § 2254(d) when it '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment . . . even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.'" *Serrano v. Fischer*, 412 F.3d 292, 296 (2d Cir. 2005) (internal quotations omitted); *Williams v. Spitzer*, 246 F. Supp. 2d 368, 379 (S.D.N.Y. 2003).

A state court decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by the [Supreme] Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412-13. Alternatively, the state court decision is an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. at 407-08). The "unreasonable application" inquiry focuses on whether the state court application of clearly established federal law is "objectively unreasonable," as opposed to whether it is merely "incorrect"

or "erroneous."[4]  *See Bell*, 535 U.S. at 694 (citing *Williams v. Taylor*, 529 U.S. at 409-10); *see also Renico v. Lett*, -- S. Ct. --, 2010 WL 1740525, at *9 (May 3, 2010) (reversing grant of habeas petition because state court determination, "while not necessarily correct – was not objectively unreasonable."); *Eze*, 321 F.3d at 125.  Clearly established federal law "refers to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. at 412; *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004); *Yung v. Walker*, 296 F.3d 129, 135 (2d Cir. 2002); *cf. Carey v. Musladin*, 549 U.S. 70, 78-79 (2006) (Stevens, J., concurring).  In other words, courts look to the "governing legal principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

Lastly before turning to the specifics of Eley's claims, federal district courts may not grant a habeas petition if the state court determination provides an independent basis under state law for denying the federal claim, which adequately supports the result.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Harris v. Reed*, 489 U.S. 255, 262 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977).  In such circumstances, the claim is considered procedurally barred or procedurally defaulted as a result of the state court determination on state law grounds.

---

[4] As long as the state court application of clearly established federal law was not *unreasonable*, an application that was incorrect or erroneous would not warrant habeas relief.  As recently as this week, the Supreme Court has reinforced this distinction: "Whether or not the Michigan Supreme Court's opinion reinstating [the petitioner's] conviction was *correct*, it was clearly *not unreasonable*."  *Renico*, 2010 WL 1740525, at *10 (emphasis in original).  There is authority in this Circuit, however, for first determining whether the state court application was erroneous, and then, if not incorrect, denying the petition on that basis – since the "correct" application will not be unreasonable.  *See Kruelski v. Connecticut Superior Court for the Judicial Dist. of Danbury*, 316 F.3d 103, 106 (2d Cir. 2003); *see also Jodhan v. Ercole*, No. 07-CV-9263, 2008 WL 819311 at *4 (S.D.N.Y. Mar. 28, 2008).  If the claim thus fails under the simpler and "less deferential pre-AEDPA standard," there is less of a need to proceed onto the more "intricate" AEDPA standard.  *See Jodhan*, 2008 WL 819311, at *4.

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.

**B. Analysis**

Eley raises two separate, but related claims. The first is premised on a violation of a state procedural statute governing jury selection and of his due process rights during voir dire. The second asserts that Eley received ineffective assistance of counsel when his attorney failed to object to the error that forms the substance of the first claim. The claims are either procedurally barred, without merit, or both. The court will address each in turn.

### 1. *Violation of N.Y. Criminal Procedure Law § 270.15(2)*

Eley's first ground for relief is that the prosecution's untimely peremptory challenge against Ms. Ehrenburg during the third round of voir dire (after both the prosecution and Eley had made their peremptory challenges for that round) violated New York Criminal Procedure Law § 270.15(2), which governs the use of challenges for cause and peremptory strikes.[5] On direct appeal, however, the Appellate Division found that the claim was waived when defense counsel did not object to the

---

[5] "Upon the completion of [] examination by both parties, each, commencing with the people, may challenge a prospective juror for cause, as prescribed by section 270.20. If such challenge is allowed, the prospective juror must be excluded from service. After both parties have had an opportunity to challenge for cause, the court must permit them to peremptorily challenge any remaining prospective juror, as prescribed by section 270.25, and such juror must be excluded from service. *The people must exercise their peremptory challenges first and may not, after the defendant has exercised his peremptory challenges, make such a challenge to any remaining prospective juror who is then in the jury box.*" N.Y. Crim. Proc. Law 270.15(2) (emphasis added).

peremptory strike at issue, and it affirmed the judgment on that basis.[6] *People v. Eley*, 35 A.D. 3d 498 (2d Dep't 2006). Habeas relief is therefore not available on this claim, as the state court's ruling constitutes an "independent and adequate" basis under state law to reject the claim, which is procedurally barred. *See Coleman*, 501 U.S. at 750. "The invocation of New York's contemporaneous objection rule was an independent and adequate state procedural ground for the disposition of the petitioner's claim[.]" *Jenkins v. Beaver*, No. 01-CV-483, 2003 WL 23185773, at *4 (E.D.N.Y. Oct. 28, 2003) (rejecting jury selection claim as procedurally barred for failure to object and then finding the claim, "[a]t any rate . . . without merit"); *see also Wainwright*, 433 U.S. at 87. Thus, absent a showing of cause for the default and actual prejudice flowing therefrom – a showing which discussion later in this opinion demonstrates Eley cannot make – the contemporaneous objection rule furnishes an independent and adequate basis for denying habeas relief.[7]

Even if the petitioner could meet the cause and prejudice standard for his procedurally defaulted claim, a violation of state law is not grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (U.S. 1991); *Smith v. Phillips*, 455 U.S. 209, 211 (1982); *see also Pinkney v. Senkowski*, No. 03-CV-4820, 2006 WL 3208595, at *6 (S.D.N.Y. Nov. 3, 2006) (denying habeas relief premised on violation of N.Y. Crim. Proc. Law § 270.15(2)); *McCrary v. Artuz*, No.

---

[6] The New York Court of Appeals had long ago ruled that to be preserved for consideration on appeal, the defendant must object to the peremptory challenge at issue, which has become known as the "contemporaneous objection rule." *See People v. Mancuso*, 238 N.E.2d 757, 758 (N.Y. 1968); N.Y. Crim. Proc. Law § 470.05(2)

[7] Although ineffective assistance of counsel "is cause for procedural default," *see Murray v. Carrier*, 477 U.S. 478, 488-89 (1986), the discussion below concerning the petitioner's ineffective assistance of counsel claim explains why his counsel's failure to object to the late peremptory challenge is not proof of defective performance and why the petitioner has failed to show that he suffered any actual prejudice as a result.

95-CV-622, 1995 WL 728423, at *3-4 (E.D.N.Y. Nov. 28, 1995) (similarly rejecting as non-cognizable federal habeas claims under N.Y. Penal Law §§ 270.15(3) & 270.35). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68.

Although a violation of state law does not, by itself, provide a basis for habeas relief, some inquiry is necessary into whether the violation otherwise deprived Eley of his constitutional rights to due process and a fair trial. The Supreme Court has repeatedly found that as a general matter, peremptory challenges neither raise issues of federal constitutional dimension, nor are required by due process. *See Rivera v. Illinois*, 129 S. Ct. 1446, 1453-56 (2009); *United States v. Martinez-Salazar*, 528 U.S. 304, 311 (2000); *Georgia v. McCollum*, 505 U.S. 42, 57 (1992); *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988); *see also Hayes v. Conway*, 2009 WL 320188, at *1 (2d Cir. 2009) (citations omitted); *Cordova v. Johnson*, 993 F. Supp. at 531 n. 327 (noting that [court] "interference with the use of peremptory challenges does not violate a federal constitutional right."); *Ramirez v. Phillips*, No. 04-CV-1516, 2007 WL 2162138, at *3 (E.D.N.Y. Aug. 13, 2007). But that observation alone does not "end the inquiry." *United States v. Harbin*, 250 F.3d 532, 540 (7th Cir. 2001) (citations omitted). While due process has little to say on peremptory challenges, "it does speak to the balance of forces between the accused and his accusers." *Wardius v. Oregon*, 412 U.S. 470, 474 (1973). And because criminal defendants are constitutionally afforded a fair trial, "due process may be violated by a system of [peremptory] challenges that is skewed towards the prosecution if it destroys the balance needed for a fair trial." *Harbin*, 250 F.3d at 540 (finding that government's use of peremptory strike in mid-trial violated due process); *see also Kemp v. Conway*, No. 03-CV-5439, 2005 WL 107096, at *4 (S.D.N.Y. Jan. 14, 2005) ("'[C]learly established federal

law' would almost certainly support a due process claim regarding the improper exercise of peremptory challenges where the violation was so egregious that it compromised the defendant's right to a fair trial."). Due process does not require "symmetry at every stage," but rather an "overall balance designed to achieve the goal of a fair trial." *Harbin*, 250 F.3d at 540.

The irregularity that occurred here did not skew the process so much – or even much at all – as to call into question the fundamental fairness or balance of the proceedings. *See Rivera*, 129 S.Ct. at 1454 ("The Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the 'fundamental elements of fairness in a criminal trial.'") (quotations omitted). There is no indication that the statutory violation seriously compromised Eley's right to a fair trial, and he does not even to appear to argue that his trial was otherwise unfair or was prejudiced in any way. Moreover, Eley makes no allegation that the jury that was ultimately empaneled was not impartial or was biased in any way. *See Martinez-Salazar*, 528 U.S. at 316-17; *Ross*, 487 U.S. at 88 (requiring allegation that jury was not impartial in determining Sixth Amendment and due process violations regarding peremptory challenges); *United States v. Rubin*, 37 F.3d 49, 54 (2d Cir. 1994). As there is no evidence of prejudice, the violation did not deprive Eley of a constitutionally fair trial. *See Kemp*, 2005 WL 107096, at *4 (rejecting identical claim in the absence of evidence of prejudice). While he may not have received precisely the process he was due under state law, Eley's federal due process rights were not infringed. *Cf. Hayes*, 2009 WL 320188, at * 1-2 (finding no clearly established federal law on whether denial of petitioner's "state statutory right to peremptory challenges is a violation of his due process rights" and denying petition). Because the claim appears procedurally barred, non-cognizable (at least in its statutory

incarnation) in a federal habeas petition, and otherwise without merit, the petitioner's jury selection claim does not give rise to habeas relief.

### 2. *Ineffective Assistance of Counsel*

Eley also raises a Sixth Amendment claim of ineffective assistance of counsel for his attorney's failure to object to the peremptory challenge of Ms. Ehrenburg.[8] The right to "assistance of counsel" means effective assistance of counsel. U.S. Const. amend. VI; *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (citation omitted). The benchmark for judging effectiveness as a constitutional question is whether counsel's conduct undermined the proper functioning of the adversarial process to the point that the trial cannot be relied on as having produced a just result. *Strickland*, 466 U.S. at 686. In *Strickland*, the court elaborated a two-prong test to determine this question. The petitioner must establish (1) that counsel's representation fell below an objective standard of reasonableness measured by prevailing professional norms (the "performance prong"), and (2) that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different (the "prejudice prong"). *Id.* at 688-694; *see also Porter v. McCollum*, 130 S. Ct. 447 (2009); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003). In this context, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

---

[8] Unlike the first claim, this one was not waived and thus does not appear to be procedurally barred. While the appellate division did not address the *Strickland* claim directly, its blanket assertion that Eley's "remaining contentions are without merit," is sufficient to satisfy procedural and exhaustion requirements. *See Jiminez v. Walker*, 458 F.3d 130, 145-46 (2d Cir. 2006); *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir. 2000).

In evaluating the performance prong, the court presumes that counsel's conduct falls within the range of reasonable professional norms, and that counsel's alleged deficiencies were not the result of error, but instead reflect strategic decisions. *Id.* at 689. In the context of an error in voir dire, "courts are loathe to second-guess the decisions of counsel during jury selection." *Ptak v. Superintendant*, 2009 WL 2496607, at *8 (W.D.N.Y. Aug. 13, 2009) (citing *Doleo v. Reynolds*, No. 00-CV-7927, 2002 WL 922260, at *5 (S.D.N.Y. May 7, 2002). "Strategies as to the exercise of peremptories are matters of counsel's intuition, and do not rise to the level of constitutional violation. It is not the role of the court to second-guess counsel's reasonable strategic decisions at jury selection, especially considering that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Doleo*, 2002 WL 922260, at *4-5 (quoting *Strickland*, 466 U.S. at 688); *see also Cordova v. Johnson*, 993 F. Supp. 473, 528 (W.D. Tex. 1998) ("An attorney's actions during voir dire are considered to be a matter of trial strategy and cannot form the basis for an ineffective assistance claim unless counsel's tactical decisions are so ill chosen that they 'permeate the entire trial with obvious unfairness.'"). The line separating a reasonable tactical decision (entitled to deference), and a marked departure from prevailing professional norms is, admittedly, not always a clear one. It seems likely that Eley's counsel did not object because he did not consider the matter of terrible import or significance in an otherwise proper voir dire process in which he regularly made his peremptory challenges after the prosecution had made theirs. Or he might have failed to object so as to force the prosecution to expend an additional peremptory challenge in order to strike Ehrenburg from the panel. Or he did not object because he did not particularly want Ehrenburg on the panel. But all of this is speculative,

and regardless of whether counsel's failure to object was an error or a tactical decision, or whether or not his performance was constitutionally deficient, there is insufficient evidence of resulting prejudice to entitle Eley to habeas relief.

Had Eley objected to the belated peremptory strike, it is possible that Justice Feldman would have agreed with him and seated that juror. It is also possible that she would have overruled Eley's objection and allowed the peremptory challenge. Either way, there is scant evidence to suggest that the result of the proceeding might have been different. Both scenarios offer little reason to conclude that an objection on Eley's part would have produced a reasonable probability of a different outcome, and Eley makes no assertion that the jury was not impartial or that a biased juror took Ehrenburg's place. *See Teague v. Scott*, 60 F.3d 1172-73 (5th Cir. 1995) (finding on *Strickland* claim alleging deficient *voir dire* performance, that petitioner could not show prejudice without showing that any partial prospective jurors were actually seated on the jury); *Clark v.* Collins, 19 F.3d 959, 965 (5th Cir. 1994) (requiring actual evidence of juror bias); *United States v. Battle*, 264 F. Supp. 2d 1088, 1178 (N.D. Ga. 2003) ("[I]n order to satisfy the prejudice prong of *Strickland*, Defendant must show that the selection process produced a biased juror."); *Cordova*, 993 F. Supp. at 530-31 (rejecting *Strickland* claim on the basis of failing to "identif[y] any objectionable juror whom [the petitioner's] counsel was forced to accept as a result of any deficiency by said counsel during voir dire."). The fact that the incident in question passed with little fanfare or protestation on counsel's part indicates that it was a minor, insignificant event in voir dire. To conclude otherwise would be to improperly elevate the roles of speculation and conjecture. *See, e.g.*, *Hinojosa v. Dretke*, No. 01-CV-136, 2004 WL 2434353, at *16 n.20 (W.D. Tex. Sept. 30, 2004) ("Conclusory assertions that a differently

composed petit jury might have rendered a different verdict are far too speculative to support a finding of prejudice under *Strickland*."). Counsel's error – if indeed it *was* error – does not serve to undermine confidence in the result, and nothing indicates that the claimed deficiency in counsel's performance had any impact on the trial or the jury's verdict. The claim, therefore, lacks merit.

### C. Other Relief

Eley has also requested appointment of counsel for the purpose of conducting an evidentiary hearing. No such hearing is required here, since material facts are not in dispute and nothing adduced at the hearing would bear on how this petition should be decided. *See Townsend v. Sain*, 372 U.S. 293, 312, 318 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992); *Harrison v. Senkowski*, 247 F.R.D. 402, 414-17 (E.D.N.Y. Jan. 22, 2008) (reviewing standards for appointment of counsel and evidentiary hearing); Fed. R. Hab. Corpus 8. Accordingly, it is not necessary to appoint counsel. Additionally, "counsel should not be appointed in a case where the merits of the indigent's claims are thin and his chances of prevailing are therefore poor." *Mabee v. Phillips*, No. 05-CV-4182, 2009 WL 3644077, at *21 (S.D.N.Y. Nov. 4, 2009) (quoting *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001)). The petitioner's request for the appointment of counsel and for an evidentiary hearing should be denied.

## CONCLUSION

For the reasons stated above, the court respectfully recommends that Eley's petition for a writ of habeas corpus and the other relief he requests be DENIED.

\*          \*          \*          \*          \*          \*          \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court with a copy to the undersigned within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir. 1992); *Small v. Sec. of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:  Brooklyn, New York
            May 6, 2010